UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAWRENCE J. MASSEY, III,

                              Plaintiff,

                                                      6:16-cv-01257
v.                                                    (LEK/TWD)

WAL-MART STORES, INC., PRIMAL VANTAGE
COMPANY, TASHIN INDUSTRIAL CORP USA,
AND AMERISTEP CORPORATION,

                              Defendants.
_____

APPEARANCES:                          OF COUNSEL:

LAWRENCE J. MASSEY, III
Plaintiff, pro se
510 Loney Wheatley Road
Lexington, TN 38351

HINSHAW & CULBERTSON LLP              GREGG D. MINKIN, ESQ.
Counsel for Defendants
800 Third Avenue
13th Floor
New York, NY 10022

CLARK HILL PLC                        MILTON S. KARFIS, ESQ.
Counsel for Defendants                BISHOP A.L.E. BARTONI, ESQ.
500 Woodward Avenue                   STEPHANIE I. MARINO ANDERSON, ESQ.
Suite 3500
Detroit, MI 48226

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

This matter is presently before the Court to consider whether this products liability action

should be *sua sponte* dismissed for failure to prosecute and failure to comply with Orders of the

Court. For the reasons set forth below, the Court recommends that Plaintiff's complaint be *sua sponte* dismissed pursuant to Federal Rule of Civil Procedure 42(b).

## I.    RELEVANT PROCEEDINGS TO DATE

On or about September 12, 2016, Plaintiff Lawrence J. Massey, III, represented by Maynard, O'Connor, Smith & Catalinotto, LLP ("Maynard, O'Connor") filed a Summons and Complaint in New York Supreme Court, County of Fulton, Index No. 04828. (Dkt. No. 2.) On October 18, 2016, pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446, and Federal Rule of Civil Procedure 81(c), Defendants Primal Vantage Company, Inc., Tashin Industrial Corp USA, and Ameristep Corporation removed the action to this District. (Dkt. No. 1.) Defendants filed their answers on October 21, 2016. (Dkt. Nos. 7 and 8.)

Thereafter, on January 11, 2017, Maynard, O'Connor filed a motion requesting permission to withdraw as counsel for Plaintiff. (Dkt. No. 36.) Plaintiff's response to his counsel's motion was due January 30, 2017. (Text Entry 1/12/2017.) Plaintiff did not respond to the motion nor contact the Court to request an extension of time in which to do so. (Text Entry 2/9/2017.)

Maynard, O'Cooner's motion to withdraw as counsel was granted on February 9, 2017. (Dkt. No. 44.) That same day, the Court also issued a Text Order directing Plaintiff to notify the Court within thirty (30) days of his new attorney or notify the Court that he would proceed *pro se*. *Id.* Plaintiff was advised that if he was proceeding *pro se*, he must notify the Court of a current address and phone number where he could be reached. *Id.* Plaintiff was warned that failure to notify the Court of such information within thirty (30) days of the February 9, 2017, Text Order may result in sanctions, including a recommendation that this action be dismissed for failure to prosecute and failure to follow a Court Order. *Id.* A copy of the February 9, 2017,

Text Order was mailed to Plaintiff at his last known address, 510 Loney Wheatley Road, Lexington, Tennessee 38351. *Id.*

On February 24, 2017, the February 9, 2017, Text Order was returned as undeliverable. (Dkt. No. 47.[1])  The envelope was marked "Forward Time EXP – RTN to Sender." *Id.*  On March 1, 2017, the Court directed the Clerk to re-serve copies of the February 2017, Text Orders (Dkt. Nos. 44 and 46) on Plaintiff at his last known address.  (Dkt. No. 49.)

On March 27, 2017, the Court reviewed the docket and found that no new attorney had filed a notice of appearance on behalf of Plaintiff and that Plaintiff had failed to contact the Court regarding his current address and telephone number.  (*See* Text Entry 3/27/2017.)

In deference to Plaintiff's *pro se* status, the Court provided Plaintiff one more opportunity to contact the Court in writing by April 28, 2017, with a current address and telephone number, and to indicate whether he intended to pursue this action.  (Dkt. No. 50.)  Plaintiff was advised that failure to contact the Court may result in sanctions including a recommendation for dismissal for failure to follow Court Orders and failure to prosecute. *Id.*  The Clerk mailed a copy of the March 27, 2017, Text Order to Plaintiff to his last known address, 510 Loney Wheatley Road, Lexington, Tennessee 38351, and to the address shown on the returned envelopes (*see* Dkt. Nos. 47 and 48), 103 Holly Street, Lexington, Tennessee 38351. *Id.*

On April 4, 2017, the March 27, 2017, Text Order mailed to Plaintiff at his last known address, 510 Loney Wheatley Road, Lexington, Tennessee 38351 was returned as undeliverable. (Dkt. No. 51.)  The envelope was marked "Forward Time EXP - RTN to Sender." *Id.*

---

[1]  A February 17, 2017, Text Order (Dkt. No. 46) adjourning all deadlines, including the mediation previously scheduled to occur on March 15, 2017, in Troy, New York, that was mailed to Plaintiff at his last known address was also retuned as undeliverable on February 24, 2017.  (Dkt. No. 48.)

Likewise, on April 10, 2017, the March 27, 2017, Text Order mailed to Plaintiff at 103 Holly Street, Lexington, Tennessee 38351 was returned as undeliverable. (Dkt. No. 52.) The envelope was also marked "Forward Time EXP – RTN to Sender." *Id.*

As of the date of this Report-Recommendation, Plaintiff has not complied with the Court's March 27, 2017, Order nor contacted the Court to request an extension of time in which to do so.

## II.     DISCUSSION

"United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a case." *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (Kahn, D.J.) (citing *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *1 (S.D.N.Y. Dec. 12, 2005)[2] ("Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders.")); *see also Dumpson v. Goord*, No. 00-CV-6039 CJS, 2004 WL 1638183, at *2-3 (W.D.N.Y. July 22, 2004) (dismissal warranted where plaintiff failed to comply with a court order to provide updated address).

Furthermore, Federal Rule of Civil Procedure Rule 41(b) provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the case, or to comply with the procedural rules or orders of the court. Fed. R. Civ. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) ("[I]t is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute, *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)."); *see also Martens v. Thomann*, 273 F.3d 159,

---

[2] The Court will provide Plaintiff with copies of unpublished decisions cited in this Report-Recommendation and Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

179 (2d Cir. 2001)). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). It is also well-settled that the term "these rules" in Rule 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for a district court. *Tylicki*, 244 F.R.D. at 147.

In determining whether such dismissal is appropriate, the court should consider (1) the duration of the delay occasioned by the plaintiff's conduct, (2) whether the plaintiff has received notice that further delay would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) the plaintiff's right to due process, and (5) the efficacy of lesser sanctions. *Lucas v. Miller*, 84 F.3d 532, 535 (2d Cir. 1996); *Davis v. Citibank, N.A.*, 607 F. App'x 93, 94 (2d Cir. 2015). No one factor is dispositive. *See Martens*, 273 F.3d at 180. However, with regards to *pro se* litigants, Rule 41(b) dismissal "remains a harsh remedy to be utilized only in extreme circumstances," and *pro se* plaintiffs "should be granted special leniency regarding procedural matters." *LeSane*, 239 F.3d at 209 (citation omitted).

Considering the first factor, Plaintiff has failed to take any action in this case for several months. (*See* Dkt. No. 44.) Specifically, Plaintiff has failed to follow the Court's Orders to provide a current address and telephone number where he can be reached. (Dkt. Nos. 44 and 50.) Therefore, this factor weighs in favor of dismissal.

Regarding the second factor, "[t]he Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction." *Folk v. Rademacher*, No. 00-CV-199S, 2005 WL 2205816, at *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens*, 273 F.3d at 180-81). Plaintiff has failed to contact the Court after being ordered to do so by the Court. (*See* Dkt. Nos. 44 and 50.) Plaintiff was notified that his failure to do so may constitute grounds for

dismissal of the action for failure to prosecute and failure to follow the Court's orders. *Id*; *see, e.g.*, *Nolan v. Primagency, Inc.*, No. 07 Civ. 134 (RJS), 2008 WL 1758644, at *3 (S.D.N.Y. Apr. 16, 2008) ("The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met.") (citing *Shannon v. General Elec. Co.*, 186 F.3d 186, 194-95 (2d Cir. 1999)); *Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal."). Thus, the second factor also weighs in favor of dismissal.

With respect to the third factor, "prejudice to defendants resulting from unreasonable delay may be presumed." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). Here, the fact that correspondence sent to Plaintiff over the past three months have all been returned as undeliverable presents an obvious impediment to the case going forward. Moreover, the events giving rise to Plaintiff's claims allegedly occurred in 2013, and Defendants have been unable to depose Plaintiff, nor obtain any discovery. (*See* Dkt. No. 2.) Further delay may well affect the parties' ability to locate witnesses, and to preserve evidence. *See, e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (noting that passage of time would cause memories to fade). Therefore, the third factor weighs in favor of dismissal.

As to the fourth factor, the Court finds that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case. Plaintiff has failed to advise the Court of his whereabouts and thus has demonstrated little interest in

being heard.[3]  It is the need to monitor and manage cases such as this that delay the resolution of other cases.

With respect to the fifth factor, the Court has carefully considered sanctions less drastic than dismissal and finds them to be inadequate.  *See, e.g.*, *Jones v. Hawthorne*, No. 9:12-CV-1745 (GTS/RFT), 2014 WL 2533166, at *3 (N.D.N.Y. June 5, 2014) ("Without the ability to communicate with [the plaintiff] there is no meaningful way to procure his 'reappearance' to actively prosecute this action.")  Because the Court cannot communicate with Plaintiff there are no lesser sanctions that can effectively be imposed at this time.  Thus, the fifth factor also weighs in favor of dismissal.

Weighing the above law and factors, the Court finds that Plaintiff's non-compliance in this matter warrants dismissal of the action.  Nevertheless, in light of Plaintiff's *pro se* status, it is recommended that the dismissal be without prejudice.[4]  *See, e.g.*, *Jones v. Hawthorne*, 2014 WL 2533166, at *2 (dismissing complaint without prejudice pursuant to Rule 41 for failure to prosecute where *pro se* plaintiff failed to provide the Court with an updated address); *Grace v. New York*, No. 10 Civ. 3853(LTS/GWG), 2010 WL 3489574, at *2 (S.D.N.Y. Sept. 7, 2010) (recommending dismissal for failure to prosecute without prejudice where *pro se* plaintiff could not be reached at the address he provided) (collecting cases).

## III.    CONCLUSION

After reviewing the Docket Report, the Court finds that Plaintiff has exhibited an apparent unwillingness to participate in this litigation.  Because Plaintiff cannot be located or

---

[3]  Notably, before being deemed *pro se*, Plaintiff lost touch with his prior attorney who made significant, but unsuccessful, attempts to locate him.  (*See* Dkt. No. 36-1 at 2-6.)

[4]  Unless the dismissal order states otherwise, a dismissal pursuant to Rule 41(b) "operates as an adjudication on the merits."  Fed. R. Civ. P. 41(b).

communicated with at his address of record and has failed to comply with the Court's Orders, the Court recommends sua sponte dismissing Plaintiff's complaint without prejudice for failure to prosecute and failure to comply with Orders of the Court.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 2) be *sua sponte* **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(b); and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on Plaintiff to his address on file and at 103 Holly Street, Lexington Tennessee 38351, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72.

Dated: May 5, 2017
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

2005 WL 3370542
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

INTERNET LAW LIBRARY, INC.
and Hunter M.A. Carr, Plaintiffs,
v.

SOUTHRIDGE CAPITAL
MANAGEMENT, LLC, et al., Defendants.
COOTES DRIVE, LLC.,
Defendant, Counterclaim-Plaintiff,
v.
INTERNET LAW LIBRARY, INC.,
Plaintiff, Counterclaim-Defendant.
Jack TOMPKINS, Kerwin Drouen, et al., Plaintiffs,
v.

SOUTHRIDGE CAPITAL
MANAGEMENT, et al., Defendants.

No. 01 Civ. 6600(RLC).
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Koerner Silberberg & Weiner, LLP, New York, NY, for
Internet Law Library, Inc.

Maryann Peronti, of counsel.

Christian, Smith & Jewell, Houston, TX, for Internet Law
Library, Inc.

Gary M. Jewell, James W. Christian, of counsel.

Tate & Associates, Richmond, TX, for Internet Law
Library, Inc.

Richard L. Tate, James W. Christian, of counsel.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Mangement Ltd.

Perrie M. Weiner, Caryn G. Mazin, Palmina M. Fava, of
counsel.

Kramer Levin Naftalis & Frankel LLP, New York, NY,
for Citco Group Limited.

Michael J. Dell, of counsel.

Law Offices of Michael S. Rosenblum, Los Angeles, CA,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Management Ltd.

Michael S. Rosenblum, Amy M. Caves, of counsel.

Hanley Conroy Bierstein & Sheridan LLP, New York,
NY, for Kirwin Drouet, Jack Thompkins and Hunter
M.A. Carr.

Thomas I. Sheridan, III, of counsel.

Morrison & Foerster LLP, New York, NY, for Mark
Valentine.

Carl H. Loewenson, Jr., James E. Johnson, Joel C. Haims,
of counsel.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC,
New York, NY, for Thomson Kernaghan & Co, Ltd., and
TK Holdings, Inc.

Debra A. Clifford, of counsel.

OPINION

CARTER, J.

BACKGROUND

**\*1** This case is the result of several actions arising out
of a set of related financing transactions. [1] The court
consolidated these cases and named ITIS Holdings Inc.
("INL") (f/k/a ITIS Inc. and Internet Law Library),
Hunter Carr, Kerwin Drouet, and Jack Tompkins the
plaintiffs. *Internet Law Library, Inc. v. South Ridge Capital
Mgmt., LLC,* 208 F.R.D. 59 (S.D.N.Y.2002) (Carter,
J). Accordingly, Southridge Capital Management LLC,
Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, Navigator Management Ltd., The Citco Group
Limited, Citco Trustees (Cayman) Limited and Cootes
Drive, LLC ("Cootes Drive") were named defendants and
Cootes Drive's claims against INL became counterclaims.
*Id.*

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

1

On January 12, 2001, INL, its Chief Executive Officer, Hunter M .A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas claiming, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. *See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al,* 01 Civ. 660(RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. *See Brewer, et al. v. South Ridge Capital Mgmt ., LLC, et al.,* 0202 Civ. 0138(RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. *See Cootes Drive, LLC v. Internet Law Library, Inc.,* 01 Civ. 0877(RLC).

Over the years the court has dealt with various issues, (*see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC,* 223 F.Supp.2d 474 (S.D.N.Y.2002) (Carter, J) (hereinafter *"Internet Law I"* )) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in *Internet Law Library Inc. v. South Ridge Capital Mgmt ., LLC,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.) (hereinafter *Internet Law II* ).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to Rule 37(b)(2)(C), F.R. Civ. P., due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

DISCUSSION

I PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judicata* effect of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because Rule 37(b)(2)(C), Fed. R. Civ. P ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f) ... the court in which the action is pending may ... (C) ... strike [ ] out pleadings or parts thereof ... or dismiss[ ] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. *See Chambers v. Nasco, Inc.,* 501 U.S. 32, 45 (1991). Plaintiffs flagrantly disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

**\*2** Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 757 F. Supp 283, 291 (S.D.N.Y.1991) (Conner, J.). Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint. [2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

2  A dismissal under Rule 37 is an adjudication on the merits. *See* Rule 41(b), F.R. Civ P.; *Nasser v. Isthmian Lines,* 331 F .2d 124 (2d Cir.1964).

We confirm that the court was within its authority in dismissing plaintiffs' complaint and that plaintiffs' affirmative defenses still stand. The court did not overlook these subjects. Accordingly, the motion for reconsideration is denied.

## II PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to dismiss their claims pursuant to Rule 37, the plaintiffs have the audacity to request that we now dismiss Cootes Drive's counterclaims pursuant to the same rule and for the same alleged conduct. Without delving into the sophistical reasoning that allows them to entertain these contradictory propositions, it bears repeating that plaintiffs flagrantly defied the court's order. The plaintiffs and not Cootes Drive disrespected the court. If Cootes Drive had done so, or if they ever do, the court would not hesitate to impose sanctions. The motion is denied.

## III PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs filed motions to supplement the record. The documents that are the subject of these motions were produced in connection with an action pending in Georgia. The documents themselves are the organizational documents and various agreements between companies affiliated with Cootes Drive. There are also letters and memoranda sent to and from these affiliated companies and the law firm of Dorsey & Whitney LLP, their transactional counsel. Plaintiffs assert that these documents demonstrate that the defendants operated their businesses in a tiered structure in order to limit liability. Even if true, this assertion does not make the documents relevant to Cootes Drive's claims of breach or plaintiffs' motions to dismiss and for reconsideration. Indeed, many of the documents predate the note and agreement by several years. Because plaintiffs have not sufficiently demonstrated the relevance of the documents to the motions that they seek to supplement, plaintiffs' two motions to supplement the record are denied.

## IV MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

**\*3** Cootes Drive moves to strike portions of the affidavit of Hunter M. Carr, dated September 19, 2003 (the "Carr Affidavit") and the affidavit of Richard L. Tate, dated September 22, 2003 (the "First Tate Affidavit") based on evidentiary objections. The court finds that these affidavits comport with Rule 56(e). Cootes Drive's motions to strike the Carr Affidavit and the First Tate Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman) Limited (the "Citco defendants") move to strike the Affidavit of Richard L. Tate, dated October 20, 2003 (the "Second Tate Affidavit"). The Second Tate Affidavit is submitted as a response to the Citco Defendants' motion for summary judgment. However, to the court's best knowledge or that of the Citco defendants, there never was such a motion. Submission of a reply to a nonexistent motion is clearly inappropriate; furthermore, even if the submission of the affidavit was appropriate, the contents are not. An attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal vehicle to lobby the court. *Universal Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5 (S.D.N.Y.1965) (Levet, J.). In the Second Tate Affidavit, Tate, attorney for the plaintiffs, engages in extensive argumentation and draws numerous conclusions of law. Tate further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The Second Tate Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the Second Tate Affidavit in its entirety is granted.

## V COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc ., 477* U.S. 242, 249 (1986). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P.

### 1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive[3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

[3]    Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach.[4] The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls.Statement") at ¶ 1, and that the defendants performed. *Id.* at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. *Id.* at ¶ 14-15. Finally, defendants are able to show damages based upon the position it would have been in had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

[4]    *Internet Law I,* 223 F.Supp.2d at 490 *citing Harsco Corp.,* 91 F.3d at 348; *See also Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001) (Chin, J.).

**\*4** While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things,[5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that

defense." *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996) (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *SHL Imaging, Inc. v. Artisan House, Inc.* 117 F.Supp.2d 301, 304 (S.D.N.Y.2000) (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

[5]    Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary, or permit escape from the terms of an integrated contract."[6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud,[7] and a party may escape liability by establishing proof of such fraud.[8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations.[9]

[6]    *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir1993) *citing Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7]    *Sabo v. Delman,* 3 N.Y.2d 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957); *Bridger v. Goldsmith,* 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894) ("fraud [in the inducement] vitiates every transaction")

[8]    *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598, 184 N.Y.S.2d 599, 601 (1959)(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract ... neither party [is] relying upon any statement or representation not embodied in the is contract").

[9]    *Citibank v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 312 (1985) (provision in multimillion dollar agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

The agreement between the parties contains both a merger clause [10] and a disclaimer of reliance. [11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific. [12] In New York, no particular words are needed to make a disclaimer specific. [13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement ... the touchstone is specificity." [14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. [15] This is, by nature, a general disclaimer; it lacks the specificity that the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause]," [16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement. [17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

[10] "The Transaction Documents ... contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters ..." agreement § 4.2.

[11] "The Company acknowledges and agrees that no Purchaser makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement § 2.2.

[12] "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract ..." *Danann Realty* at 320.

[13] *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S .A,* 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) *quoting Lucas v. Oxigene, Inc.,* No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y.1995) (Mukasey, J.)

[14] *Yanakas,* 7 F.3d 310, 316 *citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984)

[15] § 2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited

investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.

[16] *Yanakas,* 7 F.3d 310, 317.

[17] *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

**\*5** The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury. [18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶ 59. Although their claim has been plead with specificity, [19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law. [20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." *M.H. Segan Ltd. Partnership v. Hasbro, Inc.* 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length. [21] Other misrepresentations, for example, that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable. [22] The remaining statements

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

are uncontroverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

[18]   *Computerized Radiological Servs. v. Syntex Corp.,* 786 F.2d 72, 76 (2d Cir.1986) *quoting Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

[19]   In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. *Internet Law I,* 223 F.Supp.2d 489-90.

[20]   *See Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable as a matter of law where alleged misrepresentations were contradicted by offering materials); *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 196 (2d Cir.2003) (plaintiff's failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170-71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

[21]   "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d 352, 369 (internal quotations omitted) *quoting Lazard Freres & Co. v. Protective Life Ins.,* 108 F.3d 1531, 1543 (2d Cir.1997).

[22]   "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.* 748 F.2d 729, 737 (2d Cir.1984).

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. *Internet Law I,* 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material. [23] If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense." [24]

[23]   "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997) (internal quotations and citations omitted); *Wechsler v. Hunt Health Systems, Ltd.,* 186 F.Supp.2d 402, 413 (S.D.N.Y.2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

[24]   *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54 (S.D.N.Y.1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

   **\*6**  Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short" [25] prior to receiving a waiver [26] from INL that enabled them to sell shares in this manner. During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance. [27]

[25] § 3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

[26] Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

[27] "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." *Cablevision Systems Corp. v. Town of East Hampton,* 862 F.Supp. 875, 885 (E.D.N.Y.1994), *aff'd* 57 F.3d 1062 (2d Cir.1995) (unpublished table decision), *quoting Miller v. Benjamin,* 142 N.Y. 613, 617, 37 N.E. 631 (1894).

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted. [28]

[28] *See Internet Law II,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.)

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support. [29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby

award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

[29] Reply to Counterclaims at 17-19.

2. Counterclaim Four: The Promissory Note
Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery. [30] A prima facie case entitles the promisee to judgment as a matter of law. [31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 ... [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29-30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note" *Id.* at 32-33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

[30] *See First Federal Sav. Bank v. Tazzia,* 696 F.Supp. 904, 906 (S.D.N.Y.1988) (Sweet, J.); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.); *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc.,* 790 F.Supp 428 (S.D.N.Y.1992) (Sweet, J .).

[31] *Gross v. Fruchter,* 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept.1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

**7** Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. *Grasso v. John I. Shutts Agency, Inc.,* 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y.App.Div.1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.). Without being explicit, plaintiffs seem to posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement. [32]

[32]   *Citicorp Intern. Trading Co., Inc.,* 790 F.Supp at 434; *Thornock v. Kinderhill Corp.,* 749 F.Supp. 513 (S.D.N.Y.1990)* (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 427 N.Y.S.2d 782 (1980)* (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat

precluding the exercise of his free will." [33] INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

[33]   *Signet Corp. v. Interbank Financial Services, Inc.,* 755 F.Supp. 103, 105 (S.D.N.Y.1991)* (Eldelstein, J.) *quoting Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

## CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

IT IS SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3370542

2004 WL 1638183
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Timothy DUMPSON (86–B–2265), Andre
Decker (96–A–0632), Moses Ortega (01–
B–2775), Amin Lewis (97–A–5101), and
Hakim Edwards (96–R–7780), Plaintiffs,
v.
Glenn S. GOORD, Donald Selsky, Michael
McGinnis, George J. Bartlett, Richard
Morse, Rocky L. Hazelton, Thomas F. Eagen,
James Meck, Robert F. McClellan, Bernard
O'Bremski, and John Alves, Defendants.

No. 00–CV–6039 CJS.
|
July 22, 2004.

**Attorneys and Law Firms**

Timothy Dumpson, Attica Correctional Facility, Attica,
New York, for plaintiff Timmothy Dumpson, pro se.

Andre Decker, Southport Correctional Facility, Pine City,
New York, for plaintiff Andre Decker, pro se.

Hakim Edwards, Southport Correctional Facility, Pine
City, New York, for plaintiff Hakim Edwards, pro se.

Moses Ortega, Elmira, New York, for plaintiff Moses
Ortega, pro se.

Amin Lewis, Southport Correctional Facility, Pine City,
New York, for plaintiff Amin Lewis, pro se.

Charles D. Steinman, Assistant Attorney General of
Counsel, NYS Office of the Attorney General, Rochester,
New York, for defendants.

DECISION AND ORDER

SIRAGUSA, J.

INTRODUCTION

**\*1** This is a prisoners' civil rights suit brought
pursuant to 42 U.S .C. § 1983 (2003). Plaintiffs raise
claims under the Eighth and Fourteenth Amendments
regarding the manner of their confinement in the
Southport Correctional Facility ("Southport"). In a
previous decision in this case [# 52] filed on September
24, 2003, this Court, *inter alia,* denied defendants' motion
for summary judgment against plaintiffs Hakim Edwards
("Edwards") and Amin Lewis ("Lewis") on the ground
that they failed to exhaust administrative remedies,
and granted defendants' motion for summary judgment
against all plaintiffs with respect to their Fourteenth
Amendment claims on the ground of qualified immunity.
The discussion which follows assumes familiarity with the
facts as described in that decision and order.

Now before the Court are two motions: defendants'
renewed Motion for Summary Judgment against Edwards
and Lewis for failure to exhaust administrative remedies
[# 54], and plaintiff Timothy Dumpson's Motion for
Reconsideration of the Court's decision of September 24,
so as to reinstate plaintiffs' Fourteenth Amendment claims
[# 71]. For the reasons stated below, defendants' motion
is granted and plaintiff's motion is denied. Additionally,
pursuant to FED. R. CIV. P. 41(b), the Court dismisses
Andre Decker as a plaintiff in this matter based on his
failure to provide a current mailing address as required by
Local Rule 5.2 of the Western District of New York Rules
of Civil Procedure and as demanded by an order of this
court.

STANDARDS OF LAW

A. Summary Judgment Standard
The standard for granting summary judgment is
well established. Summary judgment may not be
granted unless "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to
any material fact and that the moving party is entitled to
a judgment as a matter of law." FED. R. CIV. P. 56(c).
A party seeking summary judgment bears the burden of
establishing that no genuine issue of material fact exists.
*See, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157
(1970). "[T]he movant must make a prima facie showing
that the standard for obtaining summary judgment has
been satisfied." 11 MOORE'S FEDERAL PRACTICE,
§ 56.11[1][a] (Matthew Bender 3d ed.). "In moving for
summary judgment against a party who will bear the
ultimate burden of proof at trial, the movant may satisfy

this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir.1996)(*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)), *cert denied,* 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *FED. R. CIV. P.* 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson,* 477 U.S. at 249. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. *FED. R. CIV. P.* 56(e). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v.. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

**\*2** A court should read a *pro se* litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). However, when alleging a violation of a civil rights statute, even a *pro se* litigant must make "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

B. Exhaustion of Administrative Remedies
Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." It is well settled that,

> [i]n New York State, those remedies consist of a three-step review process. Once a grievance is submitted to the inmate grievance resolution committee ("IGRC"), (1) the grievance is investigated

and reviewed by the IGRC, which is comprised of inmates and [Department of Correctional Services ("DOCS") ] employees; (2) if appealed, the superintendent of the facility reviews the IGRC's determination; and (3) if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court.

*Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citations omitted). If a plaintiff has failed to comply with 42 U.S.C. § 1997e(a) prior to commencing a lawsuit, the district court should dismiss the action without prejudice. *Neal v. Goord,* 267 F.3d 116, 121–23 (2d. Cir.2001), *overruled in part on other grounds, Porter v. Nussle,* 534 U.S. 516 (2002); *but see, Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2003) (finding dismissal with prejudice appropriate where "exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust").

ANALYSIS

A. Plaintiff Andre Decker
In accordance with *FED R. CIV. P.* 42(b), a court may *sua sponte* dismiss a plaintiff's action for failure to comply with an order of the court. *Costello v. United States,* 365 U.S. 265, 286–87 (1961). Such decisions are committed to the Court's sound discretion. *Alvarez v. Simmons Mkt. Research Bureau, Inc.,* 839 F .2d 930, 932 (2d Cir.1988) (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633(1962)). *Pro se* plaintiffs are entitled to a degree of leniency, but this "should not extend to the disregard of a judge's plain directives." *Lucas v. Miles,* 84 F.3d 532, 538 (2d Cir.1996).

According to the DOCS website, *available at* http:// nysdocslookup.docs.state.ny.us, plaintiff Andre Decker ("Decker") was released from Southport on October 16, 2002. He has not, in the 21 months following, contacted the Court to provide a new address. Defendants advised

the Court by letter dated April 6, 2004, [1] that in their attempt to correspond with Decker, they were informed that he had been released from DOCS custody, and that no forwarding address was available from DOCS. Further, defendants related that mail sent to Decker at the address noted on the Court's docket, has been returned to them. By order of April 21, 2004, pursuant to Local Rule 5.2 of the Western District of New York Rules of Civil Procedure, the Court mailed to Decker, at the address he provided, an order directing him to confirm in writing where he could be contacted. The Court further indicated that the failure of Decker to provide a current address to the Court by May 28, 2004, could result in dismissal of his case with prejudice. He has still failed to take any action.

[1]    The Court had previously received notice from defendants, by letter of October 3, 2003, that Mr. Decker was no longer listed as being in DOCS custody but had provided defendants with no forwarding address.

**\*3** Decker's non-compliance is manifestly unreasonable. The demand that plaintiffs provide contact information is no esoteric rule of civil procedure, but rather the obvious minimal requirement for pursuing a lawsuit. Consequently, the Court determines that Decker should be dismissed as a plaintiff in this case. *See Dong v. United States,* No. 02 Civ. 7751(SAS), 2004 U.S. Dist. LEXIS 3125, at \*8–9, 2004 WL 385117 (S.D.N.Y. March 2, 2004) (finding that "the very fact that Dong has been inaccessible for the last two months—without notifying the Court, the Government, or the Pro Se Office of a change of address—strongly suggests that he is not diligently pursuing this claim"); *Ortiz v. United States,* No. 01 Civ. 4665(AKH), 2002 U.S. Dist. LEXIS 12621, at \*4– 5, 2002 WL 1492115 (S.D.N.Y. July 11, 2002) (dismissing complaint where "[p]laintiff has not even fulfilled his minimal obligation to keep the pro se office of this Court informed of his change of address"). Nor can Decker be spared dismissal on the ground that he did not actually receive the Court's order of April 21, 2004, since he himself was responsible for the Court's inability to notify him. *See Mathews v.. U.S. Shoe Corp.,* 176 F.R.D. 442, 445 (W.D.N.Y.1997) (dismissing *pro se* plaintiff's lawsuit for failure to prosecute where plaintiff's not actually receiving the court order warning of dismissal could "only be attributed either to plaintiff's deliberate failure to claim the letter, or her failure to advise the court of a change of address.").

**B. Defendants' Motion for Summary Judgment**
Defendants have renewed their motion for summary judgement against Edwards and Lewis for failure to exhaust administrative remedies, and have supplied a new affidavit by the Director of the DOCS Inmate Grievance Program, defendant Thomas G. Eagen ("Eagen"). In the order of September 24, this Court noted that, because the affidavit Eagen filed for defendants' previous motion for summary judgment "contain[ed] no explanation concerning how the records are kept, or the process he and his staff employed to search for Edwards' and Lewis' record," it was "conclusory and, therefore, inadmissible as evidentiary proof" (p. 13). Defendants had no other evidence of failure to exhaust, and thus failed to meet their burden of showing the absence of a genuine issue of fact when both Edwards and Lewis claimed to have exhausted their administrative remedies. *Id.*

Eagen's new affidavit does meet the standard for admissibility as evidentiary proof. *See* FED.R.EVID. 803(7) & 803(10). It is substantially identical to the affidavit submitted by Eagen in support of defendants' motion for summary judgment in *Preston Smith v. McGinnis, et. al.,* No. 01 Civ. 6244 (W.D.N.Y. September 30, 2003). In that case, the Honorable David G. Larimer, U.S. District Judge, Western District of New York, found that "Eagen's affidavit suffices to meet defendants' initial burden of demonstrating the absence of any genuine issue of material fact." *Id.* at 5. The plaintiff was, therefore, required to "come forward with 'concrete evidence' that at least gives rise to an issue of fact in this regard." *Id.* In the instant case as well, Eagen's affidavit suffices to meet defendants' initial burden and to shift the burden to plaintiffs to demonstrate the existence of a genuine issue of material fact.

**\*4** By Motion Scheduling Order [# 70] of November 6, 2003, the Court ordered that plaintiffs file and serve any responding papers submitted in connection with this motion on or before December 5, 2003. Defendants' Notice of Motion [# 54] advised plaintiffs of their obligations as non-moving parties under FED. R. CIV. P. 56. *See Irby v. N.Y. City Transit Auth.,* 262 F.3d 412 (2d Cir.2001). To date, however, plaintiffs have not responded to defendants' application. The Court, therefore, must rely upon plaintiffs previous submissions in determining whether or not there is evidence that, viewed in the light most favorable to plaintiffs, could support a finding that

Edwards and Lewis have exhausted their administrative remedies.

Edwards claims that he "filed previous Grievances to I.R.G.C., Superintendent, Medical Staff and the Commissioner," but obtained no relief. Edwards' Aff. in Supp. of Compl. [# 7], ¶ 7. He filed a grievance on June 13, 1999, complaining about lack of medical attention for a skin condition, headaches, and back pain. Compl. [# 1], Edwards' Exs. [2] The grievance was denied. On July 25, 1999, he filed a second grievance in which he specifically addressed the issue of his restraint and claimed that it deprived him of the ability to exercise. *Id.* This grievance too was denied. The I.G.R.C. stated in its recommendation of July 30, 1999, that "[g]rievant was removed from Full Restraint Status on 7/25/99," and that he was receiving what medical attention he required. *Id.* Edwards then wrote two letters dated August 17, 1999, [3] asking for appeal or re-submission of the previous grievances. *Id.* The letter concerning the June grievance was addressed to defendant Bernard O'Bremski, the Nurse Administrator at Southport, whereas the letter concerning the July grievance was addressed merely "To Whom It May Concern." *Id.*

[2]    Plaintiffs' seventy-five paragraph complaint came with several bundles of exhibits, some of which are identified by letters, others of which are merely stapled together. This particular exhibit is one of those merely stapled together and contains ten pages, all of which refer to Edwards.

[3]    Edwards also wrote a letter of July 27, 1999, Deputy Commissioner of Correctional Facilities, Lucien J. LeClaire, Jr., asking him to look into the matter of Edwards' full restraint and resulting pain. It is not clear whether Edwards believes this letter contributes to his exhaustion of administrative remedies. Informal grievances, however, satisfy the exhaustion requirement only if they resolve the issue. *Thomas v. Cassleberry,* 315 F.Supp.2d 301 (W.D.N.Y.2004). Edwards has not suggested that his letter to LeClaire resolved his grievance about his restraint status.

As to Lewis, the record contains two relevant documents. In an affidavit from November 17, 2000, Lewis states that he "has filed Grievances to complain about the restraints and the pain it caused[.] The plaintiff filed [sic] the Grievances to [sic] the Defendants (McGinnis) and (Morse) as they continued to uphold and keeping [sic] me

under these painful restraints." Lewis' Aff. in Supp. of Class Action [# 15], ¶ 12. Lewis also wrote a letter of June 21, 2001, to the Honorable Jonathan W. Feldman, U.S. Magistrate Judge [# 49], claiming that when he was moved to another facility, corrections officers lost his personal copies of the grievances he had filed.

Even viewed in the light most favorable to plaintiffs, this evidence cannot preclude summary judgment against either Edwards or Lewis. Lewis does not even so much as suggest that he appealed any grievances he filed. If Edwards can be said to have appealed, he presents no evidence that he filed his appeal with the Superintendent as the exhaustion process demands. Neither Edwards nor Lewis claims to have appealed to CORC. Since the Eagen affidavit satisfies defendants' burden of showing the absence of a material factual dispute and plaintiffs have not even contradicted it, defendants are entitled to summary judgment against Edwards and Lewis.

C. Plaintiff's Motion to Reconsider

**\*5** Plaintiff Timothy Dumpson ("Dumpson") moves this Court to reverse that portion of its order of September 24, 2003, which dismissed plaintiffs' Fourteenth Amendment claims. He states his ground for the motion as "the [d]istrict court['s] error in granting the [d]efendants [q]ualified [i]mmunity on the plaini tiff['s] [d]ue process [l]iberty [i]nterest claims." Pl.'s Mem. of Law in Support of 60(b) Mot. [# 72], at 2. Though he styles this a 60(b) motion, that rule applies only after "a final judgment, order, or proceeding." FED. R. CIV. P. 60(b); *Chao v. Russell P. Le Frois Builder, Inc.,* 291 F.3d 219, 229 (2d Cir.2002). This Court's order of September 24, 2003, was an interlocutory, and not a final, order because it "adjudicate[d] fewer than all of the claims" in the action. FED. R. CIV. P. 54(b); *Citizens Accord, Inc. v. Town of Rochester,* 235 F.3d 126, 128 (2d Cir.2000). Rule 60(b), therefore, is currently unavailable to Dumpson.

The Court recognizes that it has inherent power to reconsider its decisions. *See* 7 MOORE'S FEDERAL PRACTICE § 60.20 (Matthew Bender 3d ed.). Because of the strong policy favoring finality, however, this power should be used "only sparingly." *United States v. Adegbite,* 877 F.2d 174, 178 (2d Cir.1989), *cert. denied,* 493 U.S. 956 (1989). With respect to the order of September 24, 2003, there is no reason for reconsideration. Courts "may change an interlocutory decision where, for example, there has been an intervening change in the law, where new

evidence has become available or where a clear error must be corrected in order to prevent manifest injustice." *New York v. Panex Indus.,* No. 94 Civ. 0400E(H), 1997 U.S. Dist. LEXIS 20774, *4–5 (W.D.N.Y. December 31, 1997) (citations omitted). None of these reasons applies here.

Dumpson does not claim that there has been an intervening change in the law applicable to this case. Rather, his Memorandum of Law [# 72] [4] responds to the finding that "[p]laintiffs have failed to come forward with any evidentiary proof in admissible form which in any way established that by being required to wear back restraints during exercise periods, they suffered an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life' ' (p. 16) (citation omitted). Though Dumpson now offers a thorough description of conditions at Southport in relation to other correctional facilities, this is not previously unavailable evidence that would justify reconsideration. [5] He has not demonstrated that this evidence was "neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." *Tri–Star Pictures v. Leisure Time Prods., B.V.,* No. 88 Civ. 9127(DNE), 1992 U.S. Dist. LEXIS 15232, *9 (S.D.N.Y. October 6, 1992).

[4]     Though entitled "Memorandum of Law in Support of 60(b) Motion," Dumpson's submission was sworn to as an affidavit would be.

[5]     Additionally, because Dumpson presents information gleaned from the experiences of plaintiffs collectively, much of the Memorandum would be inadmissible hearsay.

Reading the *pro se* plaintiff's motion liberally, the Court finds that plaintiff may also have intended to request certification for immediate appeal. Interlocutory orders may be appealed as of right only if they involve injunctions, receiverships, arbitratation, admirality, or patent infrigement. 28 U.S.C. § 1292(a). Other interlocutory orders, however, may be appealed "if the district court certifies [them] and the circuit court grants permission." 19 MOORE'S FEDERAL PRACTICE, § 201.30 (Matthew Bender 3d ed.); 28 U.S.C. § 1292(b). Because of the federal policy against piecemeal appeals, however, "[t]he power should be used only in the infrequent harsh case, where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Citizens Accord, Inc. v. Town of Rochester,* 235 F.3d 126, 129 (2d Cir.2000) (internal quotation marks and citations omitted). Dumpson has not shown any need for immediate appeal. To the extent that he has requested certification for immediate appeal, therefore, the request is denied without prejudice.

CONCLUSION

**\*6** Accordingly, plaintiff's motion for reconsideration of this Court's order of September 24, 2003, is denied, and defendants' motion for summary judgment against Edwards and Lewis for failure to exhaust administrative remedies is granted. The claims of Edwards and Lewis are dismissed without prejudice. Furthermore, Andre Decker is dismissed as a plaintiff in this action.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1638183

Freeman v. Lundrigan, Not Reported in F.Supp. (1996)

1996 WL 481534

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,* 370 U.S. 626 (1962). This power to dismiss an action

may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

**Freeman v. Lundrigan, Not Reported in F.Supp. (1996)**

1996 WL 481534

**\*2** IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2205816
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wattie FOLK, Plaintiff,

v.

P. RADEMACHER, et al., Defendants.

No. 00-CV-199S.
|
Sept. 9, 2005.

**Attorneys and Law Firms**

Wattie Folk, Great Meadow Corr. Facility, Comstock, NY, pro se.

William Lonergan, New York State Attorney General's Office, Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendants.

DECISION AND ORDER

SKRETNY, J.

I. INTRODUCTION

**\*1** Plaintiff commenced this action under 42 U.S.C. § 1983 on March 3, 2000, by filing a Complaint in the United States District Court for the Western District of New York. Presently before this Court is a Motion to Dismiss filed by the remaining defendants in this case-P. Rademacher, Sgt. Stachewiez, Lt. Hendel, W.Kelley, Hartman, Fleming, Booker, Piasa and Sgt. Baker ("Defendants")-on September 2, 2004. Defendants bring their motion pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. This is the third motion filed by Defendants on these grounds. For the reasons stated below, Defendants' motion is granted and this case is dismissed with prejudice.

II. BACKGROUND

This motion arises from a discovery ruling issued by the Honorable Hugh B. Scott, United States Magistrate Judge. On October 15, 2002, Defendants filed a Motion to Compel Plaintiff to respond to their First Set of Interrogatories because Plaintiff's initial response had been inadequate. On May 27, 2003, Judge Scott granted Defendants' Motion to Compel and directed Plaintiff to file appropriate interrogatory responses within twenty days. Despite being granted an extension of time in which to respond, Plaintiff failed to file his interrogatory response. As a result, on August 19, 2003, Defendants filed a Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

On November 5, 2003, this Court denied Defendants' Motion to Dismiss after Plaintiff satisfactorily explained the reason he failed to comply with Judge Scott's Order. This Court granted Plaintiff an additional thirty days within which to file his response to Defendants' First Set of Interrogatories. Plaintiff filed and served his response to Defendants' First Set of Interrogatories on November 21, 2003. This response, however, was simply a photocopy of the response Plaintiff initially filed on August 29, 2002, the one Judge Scott found to be inadequate.

Consequently, Defendants filed a second Motion to Dismiss on December 19, 2003. Plaintiff filed a response in opposition. Therein, Plaintiff did not deny that he simply re-filed his initial interrogatory response. Rather, he argued that Judge Scott did not have dispositive jurisdiction, and therefore lacked the proper authority to find his initial interrogatory response inadequate. Further, Plaintiff argued that he did not fail to respond as Defendants alleged because he did indeed file a response.

On May 24, 2004, this Court denied Defendants' Second Motion to Dismiss. In doing so, however, this Court rejected Plaintiff's arguments and excuses for not complying with Judge Scott's Order. Nonetheless, because Plaintiff is proceeding *pro se,* this Court determined that granting the relief Defendants requested would be too drastic a measure at that stage of the litigation. *See Bobal v. Rensselaer Polytecnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) ( "dismissal with prejudice [under Rule 37] is a harsh remedy to be used only in extreme situations ..."). This Court warned Plaintiff that his lawsuit may be dismissed with prejudice if he did not file and serve appropriate responses to Defendants' First Set of Interrogatories within thirty days. *Cf. id.* at 764 (discussing that a court may dismiss an action brought by a *pro se* plaintiff if such plaintiff has been advised by the court that further non-compliance with a court order could result in dismissal of the case with prejudice).

**\*2** On June 17, 2004, Plaintiff filed a Motion to Extend the thirty-day response deadline. By Order filed July 7, 2004, this Court directed Defendants to provide Plaintiff with another copy of their First Set of Interrogatories, extended Plaintiff's deadline to respond to August 30, 2004, and warned Plaintiff that this was his final extension of time and that his failure to respond could result in his case being dismissed with prejudice. On August 13, 2004, Plaintiff filed his response to Defendants' First Set of Interrogatories.

On September 2, 2004, Defendants filed their instant Third Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. By Order filed October 7, 2004, this Court directed Plaintiff to file a response to Defendants' motion on or before October 29, 2004. On October 29, 2004, Plaintiff filed a Motion for Extension of Time to respond. By Order filed November 4, 2004, this Court extended Plaintiff's response deadline to November 29, 2004, and warned Plaintiff that his failure to file a response could lead to Defendants' motion being granted as uncontested. To date, Plaintiff has not filed a response to Defendants' motion.

### III. DISCUSSION

A. Dismissal under Rule 41(b) For Failure to Prosecute This case first warrants dismissal based on Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that:

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b).

Rule 41(b) does not define what constitutes failure to prosecute. However, the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982). Dismissal pursuant to Rule 41(b) falls within the court's discretion. *See id.* at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." *Harding v. Fed. Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *see also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should only be granted "when the circumstances are sufficiently extreme." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) (citing *Nita v. Connecticut Dep't of Envtl. Prot.,* 16 F.3d 482, 487 (2d Cir.1994)).

**\*3** The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255 (2d Cir.2004); *Nita,* 16 F.3d at 485; *Feurtado v. City of New York,* 225 F.R.D. 474, 477 (S.D.N.Y.2004) (quoting *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994)). In the present case, these factors weigh in favor of dismissal.

1. Duration of Failures
The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. *See Norden Sys.,* 375 F.3d at 255.

In this case, Plaintiff has failed in two ways. First, as noted above, Plaintiff has failed to respond to Defendants'

Third Motion to Dismiss, despite twice being directed by this Court to do so. Second, and more significant, Plaintiff has failed to adequately comply with Judge Scott's discovery Order of May 27, 2003. Plaintiff has been afforded numerous opportunities to file an appropriate response to Defendants' First Set of Interrogatories. This Court alone has twice extended Plaintiff the benefit of the doubt by denying two Motions to Dismiss for Plaintiff's failure to engage in discovery. While Plaintiff did, in fact, file a response to Defendants' First Set of Interrogatories on August 13, 2004, his response is wholly inadequate. Plaintiff's response contains multiple objections to Defendants' basic interrogatory requests and does not provide anything by way of meaningful discovery. In fact, no useful information whatsoever is contained in Plaintiff's response. Clearly, Plaintiff alone is responsible for repeatedly filing inadequate responses to Defendants' discovery request. As a result, Defendants still have not received any meaningful response to their interrogatory requests.

With respect to the second inquiry, which concerns the duration of Plaintiff's failures, it has been almost one year that Plaintiff has failed to file a response to Defendants' Third Motion to Dismiss. The delay caused by Plaintiff's failure to response to Defendants' interrogatory request is even more significant. Defendants filed and served their First Set of Interrogatories on August 17, 2001. It has thus been more than *four years* and Plaintiff still has not filed an adequate response. This is a failure of significant duration. Cf. *Chira,* 634 F.2d at 666-67 (delay of six months sufficient to warrant dismissal for failure to prosecute); *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.,* No. 99 Civ. 9311, 2000 WL 1677984, at *2 (S.D.N.Y. Nov.8, 2000) (delay of four months warranted dismissal). Thus, this Court finds that this factor weighs in favor of dismissal. In this Court's view, all delay in this case is attributable to Plaintiff and it is of significant duration.

2. Notice of Dismissal

**\*4** The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction. *See Martens v. Thomann,* 273 F.3d 159, 180-81 (2d Cir.2001). In the present case, Plaintiff had adequate notice. First, both the initial Scheduling Order on Defendants' Third Motion to Dismiss and the Order granting Plaintiff's request for an extension of time warned Plaintiff that his failure to file a response as

directed could lead to Defendants' motion being granted as uncontested. Second, this Court's Decision and Order denying Defendants' First Motion to Dismiss explicitly stated that Defendants were free to seek dismissal of Plaintiff's Complaint if he failed to respond to the First Set of Interrogatories as directed. Moreover, this Court's Decision and Order denying Defendants' Second Motion to Dismiss warned Plaintiff that his failure to file appropriate responses to Defendants' First Set of Interrogatories could result in this action being dismissed with prejudice. Because Plaintiff was repeatedly put on notice that his case could be dismissed due to his continued inaction, this factor strongly weighs in favor of dismissal. *See Lyell Theatre,* 682 F.2d at 42-43 (Rule 41(b) dismissal upheld where plaintiff was warned by opposing counsel and the court that dismissal for failure to prosecute was possible).

3. Prejudice to Defendants

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted). In *Lyell Theatre,* the court presumed prejudice where the plaintiff on numerous occasions failed to file documents as directed by the court. *Id.* at 39-40, 43. Similar to the present case, the plaintiff in *Lyell Theatre* continued to ignore the court's orders even after he had been warned that he was risking dismissal. *Id.* at 39. Under *Lyell Theatre,* the prejudice to Defendants in this case may be presumed. Thus, this factor weighs in favor of dismissal.

4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.,* 375 F.3d at 257. In this regard, " 'a court must not let its zeal for a tidy calendar overcome its duty to justice.' " *Feurtado,* 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir.1968)). Plaintiff's failure to comply with Judge Scott's discovery order has resulted in this Court having to prepare and file numerous scheduling orders, as well as decide three separate motions to dismiss. While this has been a needless expenditure of judicial resources, this

Court cannot conclude that the overall effect on docket congestion has been significant.

**\*5** This Court notes, however, that Plaintiff has been afforded Due Process rights in that he has been provided numerous opportunities to comply with the Orders of this Court. Thus, Plaintiff's own failure to litigate this matter is not a denial of Due Process. *See Dodson v. Runyon,* 957 F.Supp. 465, 470 (S.D.N.Y.1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *cf. Feurtado,* 225 F.R.D. at 480 (repeated failure to comply with court orders diminishes a plaintiff's right to present his claims). Accordingly, this factor also weighs in favor of dismissal.

### 5. Consideration of Lesser Sanctions
Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. *See Norden Sys.,* 375 F.3d at 257. Upon reviewing the entire record in this case, it is the opinion of this Court that Plaintiff has no intention of complying with this Court's Orders or properly litigating this case. Plaintiff has repeatedly ignored court orders by failing to file a response to Defendants' Third Motion to Dismiss and to Defendants' First Set of Interrogatories. Given the procedural history of this case, this Court finds that any sanction short of dismissal would be ineffective. *See Smith v. Human Res. Admin. of New York City,* 2000 WL 307367, at \*3 (S.D.N.Y. Mar.24, 2000) (finding lesser sanctions inappropriate where past court orders did not motivate the plaintiff to move the case forward); *Alevizopoulos,* 2000 WL 1677984, at 4 (finding lesser sanctions inappropriate based on repeated failures to comply with court orders). Thus, this final factor also weighs in favor of dismissal.

Accordingly, this Court finds that dismissal of this case is warranted under Rule 41(b) for Plaintiff's failure to prosecute.

### B. Dismissal under Rule 37(b) For Failure to Comply with Discovery Orders
"A district court may impose sanctions when 'a party ... fails to obey an order to provide or permit discovery.' " *Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 594, 598 (W.D.N.Y.1996) (quoting FED. R. CIV. P. 37(b)).

Rule 37 of the Federal Rules of Civil Procedure, which concerns the discovery obligations of civil litigants, vests district courts with "broad power" and discretion to impose sanctions, including dismissal, on parties who fail to adhere to discovery orders. *See Friends of Animals, Inc. v. United States Surgical Corp.,* 131 F.3d 332, 334 (2d Cir.1997) (per curiam); *see also Jones v. J.C. Penney's Dep't Stores, Inc.,* 228 F.R.D. 190, 195 (W.D.N.Y.2005) (identifying dismissal of the action as an available sanction under Rule 37); *JSC Foreign Econ. Ass'n. Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* No. 03 Civ. 5562, 2005 WL 1958361, at \*9 (S.D.N.Y. Aug. 16, 2005).

**\*6** While Rule 37 dismissal is a drastic remedy to be reserved only for extreme circumstances, it "is warranted ... where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (and cases cited therein); *see also Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over information requested and fails or refuses production without showing of inability to comply with court's order). Moreover, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam).

For all of the reasons discussed above, this Court finds that dismissal of this case is also proper under Rule 37(b) for Plaintiff's failure to comply with discovery orders.

### IV. CONCLUSION

Mindful of the fact that *pro se* cases should not easily be dismissed for procedural deficiencies, this Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies, and constitute actual neglect. Plaintiff has failed to diligently prosecute this action in any manner, and has failed to comply with orders of this Court. As such, because each of the factors relevant to the Rule 41(b) and Rule 37(b) analysis favor dismissal, this Court will dismiss this case with prejudice.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Third Motion to Dismiss (Docket No. 145) is GRANTED.

FURTHER, that this case is dismissed with prejudice pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2205816

---

      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2017 Thomson Reuters. No claim to original U.S. Government Works.   5

KeyCite Yellow Flag - Negative Treatment

Distinguished by Keitt v. Doe, W.D.N.Y., December 5, 2013

2008 WL 1758644

United States District Court,
S.D. New York.

John NOLAN, Plaintiff,

v.

PRIMAGENCY, INC. et al., Defendants.

No. 07 Civ. 134(RJS).

|

April 16, 2008.

*MEMORANDUM AND ORDER*

RICHARD J. SULLIVAN, District Judge.

**\*1** On January 31, 2008, this Court issued an Order to Show Cause (the "OSC") *sua sponte,* directing counsel for plaintiff John Nolan, Mr. Louis A. Piccone, Esq., and counsel for defendants Primagency, Inc., Steven Lebetkin, and Conrad J. Isoldi ("Defendants"), Mr. Neil R. Flaum, Esq., to show cause why this case should not be dismissed and/or why sanctions and a finding of civil contempt on Mr. Piccone and/or Mr. Flaum should not issue given the failure of plaintiff to diligently prosecute this case, and the failure of the parties to follow Court orders. After counsel for plaintiff failed to appear on the return date of the OSC, the Court issued an order on March 3, 2008 imposing sanctions on the parties, but declining to dismiss the case, provided that the parties complied with the directives contained in that order. *See Nolan v. Primagency, Inc.,* No. 07 Civ. 134(RJS), 2008 WL 650387 (S .D.N.Y. Mar. 3, 2008) ("*Nolan I*"). Plaintiff failed to comply with that order in each and every respect. Accordingly, pursuant to Federal Rule of Civil Procedure 41(b), this action is dismissed with prejudice.

## I. BACKGROUND

The Court presumes the parties' familiarity with the facts relevant to this Order, which are recounted in detail in the OSC, as well as prior orders and transcripts in this matter, including *Nolan I.* However, certain facts post-date those orders and are recounted here.

The Court in *Nolan I* imposed civil contempt sanctions on Mr. Piccone and Mr. Flaum, in the amounts of $750.00 and $200.00, respectively. *See Nolan I* at *1-4. *Nolan I* also included the following directives:

> Additionally, Mr. Piccone has until March 17, 2008, to comply with the Court's November 1, 2008 and January 3, 2008 orders. This means that by March 17, 2008, Mr. Piccone must (1) properly file the Amended Complaint via the Court's electronic case system ("ECF"); (2) submit a courtesy copy of the Amended Complaint to chambers in accordance with the Individual Practices of the undersigned; (3) confer with Defendants' counsel, Mr. Flaum, regarding a joint proposed Case Management Plan; (4) submit a proposed Plan to the Court by hand delivery, email, or regular mail, provided that it reaches chambers by March 17, 2008; and (5) submit a joint status letter, along with Mr. Flaum, outlining what, if anything, has transpired in this case since the November 1, 2007 conference. Mr. Piccone is also directed to forward a copy of this order to his client, plaintiff John Nolan and file proof of service electronically with the Court ....
> ***Failure to comply with this Order in any respect shall result in dismissal of this case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.***

*Nolan I,* 2008 WL 650387 at *3 (emphasis added). With regard to Mr. Flaum, *Nolan I* contained the following directives:

> In addition, Mr. Flaum is given a limited amount of time in which to comply with past orders. This means that Mr. Flaum must (1) properly file an answer to the Amended Complaint via the Court's ECF system by April 7, 2008, assuming, of course, that

the Amended Complaint has been filed as of March 17, 2008; (2) submit a courtesy copy of the Answer to chambers in accordance with the Individual Practices of the undersigned; (3) confer with Plaintiff's counsel, Mr. Piccone, regarding a joint proposed Case Management Plan; (4) submit a proposed Plan to the Court by hand delivery, email, or regular mail, provided that it reaches chambers by March 17, 2008; and (5) submit a joint status letter, along with Mr. Piccone, no later than March 17, 2008, outlining what, if anything, has transpired in this case since the November 1, 2007 conference. If for some reason a joint letter is not possible, Mr. Flaum shall submit a status letter to the Court by March 17, 2008 explaining why the submission of a joint letter was not possible. Additionally, Mr. Flaum shall be present at the conference on Tuesday, April 8, 2008 at 10:30 a.m., and is also directed to forward a copy of this Order to his clients and file proof of service electronically with the Court. Failure to strictly comply with this order shall result in further sanctions.

**\*2** *Id.* at \*4. The Court in *Nolan I* stated three separate times that the case would be dismissed if plaintiff failed to comply with any of these directives. *Id.* at \*1–5.

Incredibly, as of April 8, 2008, as noted in the record on that day's conference, **the parties collectively had failed to comply with even one of the directives contained in *Nolan I.*** (*See* Apr. 8 Tr. at 3.) Mr. Piccone admitted on the record that he had not complied with any of the directives in *Nolan I,* and that his failure to comply with *Nolan I* was due to personal issues that the Court does not recount here but are referenced, at least in part, in the transcript of the April 8, 2008 telephone conference. [1] (*See id.* at 3–4.) Mr. Flaum noted that although he had also "missed the boat" (*id.* at 8), he sent in payment of the $200.00 sanction on April 7, 2008 and filed the status letter that day (*see*

*id.*), 21 days after the deadline contained in *Nolan I.* [2] It is unclear whether Mr. Flaum ever forwarded a copy of *Nolan I* to his clients as directed, but it is certainly clear from the docket sheet in this case that Mr. Flaum failed to file the required proof of service. *See Nolan I,* 2008 WL 650387, at \*4.

[1]  Mr. Piccone asserted on the record at the April 8, 2008 conference that he had in fact filed the amended complaint in November, 2007, and that he could submit proof demonstrating this fact. (*See* Transcript of April 8, 2008 Conference ("Apr. 8 Tr.") at 5–7.) While it may be true that Mr. Piccone did technically file a hard copy of the amended complaint in this matter, the amended complaint was never *properly* filed on ECF, because he never emailed the amended complaint to case_openings@nysd . uscourts.gov, pursuant to ECF procedure. As a result of his failure to do so, the amended complaint is not available on ECF. This is exactly what the Court sought to ameliorate when it ordered Mr. Piccone to "properly file" the amended complaint on ECF. *See Nolan I,* 2008 WL 650387, at \*3. In any event, regardless of the extent of Mr. Piccone's non-compliance with this portion of *Nolan I,* this dismissal is based on plaintiff's counsel's failure to follow numerous other directives, as outlined in this and prior orders.

[2]  A letter from Mr. Flaum addressed to the Court and dated April 7, 2008 was received in Chambers on April 9, 2008, and contained a check payable to the Clerk of the Court in the amount of $200.00. That check was tendered to the cashier in the Clerk's office on April 9, 2008.

## II. DISCUSSION

### A. Legal Standard for Dismissal Pursuant to Rule 41(b)

Rule 41(b) expressly authorizes involuntarily dismissal "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Fed.R.Civ.P. 41(b); *see also LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir.2001). The "primary rationale" for dismissal pursuant to Rule 41(b) is "the failure of plaintiff in his duty to process his case diligently." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982). Dismissal pursuant to Rule 41(b) is committed to the discretion of the district court, and may be imposed *sua sponte. See Link v. Wabash Railroad Co.,* 370 U.S. 626, 633 (1962); *LeSane,* 239 F.3d

at 209. Rule 41(b) provides that such a dismissal "operates as an adjudication on the merits" unless the dismissal order states otherwise. *See Lyell Theatre,* 682 F.2d at 42-43.

Dismissal is an extreme and "harsh" remedy only to be imposed in the most "extreme" situations, and the Court must consider the entire record in deciding whether dismissal is appropriate. *See Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996); *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993). However, in appropriate cases, dismissal must be available, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). While dismissal based on the actions of a party's attorney may have serious consequences for the represented party, the Supreme Court has recognized that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Link,* 370 U.S. at 633.

**\*3** The Second Circuit has instructed that a district court weighing dismissal of a case pursuant to Rule 41(b) should employ a balancing test, considering the following factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiffs interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas,* 84 F.3d at 535 (2d Cir.1996); *see also United States* ex rel. *Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir.2004). Generally, no one factor is dispositive. *Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 194 (2d Cir.1999) (citing *Nita v. Conn. Dep't of Envtl. Prot.,* 16 F.3d 482, 485 (2d Cir.1994)).

## B. Analysis

Weighing all of the above factors, the Court dismisses this case with prejudice pursuant to Rule 41(b).

### 1. Duration

The first element of the balancing test, the duration of plaintiffs failures, requires that the court consider "(1) whether the failures to prosecute were those of the plaintiff; and (2) whether these failures were of significant duration." *Martens v. Thomann,* 273 F.3d 159, 180 (2d Cir.2001) (citing *Spencer v. Doe,* 139 F.3d 107, 113 (2d Cir.1998)); *see also United States* ex rel. *Drake,* 375 F.3d at 255. The court must also consider whether any of the delays are attributable to the defendant. *See Jackson v. City of New York,* 22 F.3d 71, 75 (2d Cir.1994).

Here, while the various failures to follow court orders can be attributed to both parties, plaintiff is primarily to blame for the fact that this case has not advanced in more than six months. *See Nolan I,* 2008 WL 650387, at \*5. This period of delay is particularly significant given that, during that time, the action did not merely lie dormant, but the parties ignored and disobeyed multiple court orders designed to move the case along. The six-month period at issue here thus is of sufficient duration to weigh in favor of dismissal. *See Lyell Theatre Corp.,* 682 F.2d at 42-43 (noting that Rule 41 dismissal may be warranted "after merely a matter of months").

### 2. Notice

The second element to be considered is whether the plaintiff was on notice that further delay would result in dismissal of the case. *See Lucas,* 84 F.3d at 535 (2d Cir.1996). The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met. *See Shannon,* 186 F .3d at 194-95.

The notice element strongly weighs in favor of dismissal of this case. Plaintiff was given notice of the Court's intent to dismiss the action in *Nolan I,* which stated *three times*

that the action would be dismissed in the event of the plaintiffs failure to comply with its directives. *See Nolan I, 2008 WL 650387, at \*1-5.* In addition, the OSC gave both parties an opportunity to submit papers and to appear in Court to contest dismissal. Plaintiff failed to submit papers in response to the OSC, or to appear on the return date, and failed to follow even one of the directives in *Nolan I.* Furthermore, the parties had previously been warned that the Court would consider sanctioning the parties for failure to comply with Court orders. (*See* Jan. 2, 2008 Order.) Finally, plaintiff himself appeared at the January 30, 2008 conference before the Court, and was informed of the Court's intention to issue the OSC and consider dismissing the case absent further action. (*See* Jan. 30, 2008 Tr. at 3-5.) Thus, because it is abundantly clear that the Court gave plaintiff notice of the impending dismissal of the case, the second element weighs in favor of dismissal.

### 3. Prejudice

**\*4** The third element requires that the Court consider the prejudice of further delay to the defendant. *See Lucas, 84 F.3d at 535 (2d Cir.1996).* Where the delay is unreasonable, prejudice may be presumed as a matter of law. *Shannon, 186 F.3d at 195* (citing *Lyell Theatre, 682 F.2d at 43).* This is generally because "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Id.* However, "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Lyell Theatre, 682 F.2d at 43.* "Although a court cannot deny a plaintiff the right to be heard in the interest of avoiding docket congestion, where a plaintiff could have avoided dismissal 'there can be no claim by plaintiff that [its] due process rights have been denied.' " *Jacobs v. County of Westchester,* No. 99 Civ. 4976(WCC), 2008 WL 199469, at \*6 (S.D.N.Y. Jan. 22, 2008) (quoting *Europacific Asset Mgmt. Corp. v. Tradescape Corp.,* 233 F.R.D. 344, 354 (S.D.N.Y.2005) (alteration in original)).

Defendants' counsel is to blame for at least some of the delay in this matter. Because of this, and because only six months have passed, the Court will not presume prejudice. While it is demonstrably unreasonable to fail to comply with court orders for six months, the unreasonable delay present in other cases in which courts presumed prejudice

is absent here. *See Shannon, 186 F.3d at 195* (finding presumption of prejudice because events at issue in lawsuit had taken place over a decade earlier); *Peart v. City of New York, 992 F.2d 458, 462 (2d Cir.1993)* (citing potential for witness recollection to diminish or witness unavailability as the reason for a presumption of prejudice due to unreasonable delay); *Dodson,* 957 F.Supp. at 470 (S.D.N.Y.1997) (holding that dismissal was appropriate after a five-year delay because the court can presume that witnesses' "memories have faded" when eleven years have passed since the events giving rise to plaintiffs cause of action). Thus, the Court finds that the prejudice factor does not weigh in favor of dismissal.

### 4. Balancing the Court's and Plaintiff's Interests

With respect to the fourth element, the balancing of the court's interests and the plaintiff's right to a fair adjudication on the merits, the Second Circuit has instructed that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas, 84 F.3d at 535-36.* As such, the plaintiff's failure to prosecute must be "vexatious and burdensome" on the Court's ability to manage its docket, as opposed to being merely "silent and unobtrusive." *LeSane, 239 F.3d at 210.*

Plaintiff's right to an opportunity to be heard is not taken lightly by this Court. However, this action has been pending for over a year, and there has been no significant progress of any kind for six months. During that time, this Court has issued six separate orders relating to the parties' various failures, and held three conferences relating to the parties' inability to advance the case. While the Court has less knowledge of what transpired prior to this action being reassigned to the undersigned on September 4, 2007, the parties' ongoing failure to comply with orders of this Court has taken up a grossly disproportionate amount of the Court's time since October, 2007. Plaintiff's duty to prosecute the case diligently "is designed to achieve 'fairness to other litigants, whether in the same case or merely in the same court as competitors for scarce judicial resources....' " *Dodson,* 957 F.Supp. at 470 (quoting *Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 668 (2d Cir.1980)).* As such, the Court finds that plaintiff's failures have been "vexatious and burdensome" and accordingly, the fourth element weighs in favor of dismissal.

5. Efficacy of Lesser Sanctions

**\*5** Finally, the fifth element looks to whether the Court has adequately considered remedies other than dismissal. "It is clear that a district judge should employ the remedy of dismissal 'only when he is sure of the impotence of lesser sanctions.' " *Dodson,* 86 F.3d at 39 (citing *Chira,* 634 F.2d at 665). "In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay...." *Id.* at 40. "[T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer." *Id.* However, this Court must be guided by the Supreme Court's pronouncement that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link,* 370 U.S. at 633-34.

Although it is without question that plaintiff's failures in this case are solely attributable to his counsel, Mr. Piccone, plaintiff himself was on notice of Mr. Piccone's shortcomings up to and including his failure to appear on January 30, 2008. Nevertheless, as of the April 8, 2008 telephone conference, Mr. Piccone was still the counsel of record in this matter. Plaintiff voluntarily chose Mr. Piccone to represent him in this action. Thus, while dismissal is an unfortunate result for plaintiff, it is not an unjust result. *See Link,* 370 U.S. at 633-34.

As to the consideration of lesser sanctions, this factor clearly weighs in favor of dismissal. As reflected in the record of this case, the Court has given plaintiff numerous opportunities to be heard in relation to his failure to follow court orders. Prior admonishments and warnings have been wholly ineffective. Indeed, the Court previously issued a civil contempt sanction against Mr. Piccone in the amount of $750.00 in order to induce his compliance with future orders. *See Nolan I,* 2008 WL 650387 at \*3. As of the date of this Order, that sanction has not been paid. Moreover, as noted above, counsel has not complied with

*any* of the directives contained in *Nolan I.* As such, and based on the record in this case, the Court is convinced that lesser sanctions will have no impact on plaintiff's, or his counsel's, conduct or compliance with this court's orders.

As four of the five elements favor dismissal under Rule 41(b), the Court finds that dismissal is appropriate, and this case is accordingly dismissed with prejudice pursuant to Rule 41(b). While the Court is sympathetic to the personal issues encountered by plaintiffs counsel over the past few months, as alluded to by Mr. Piccone during the April 8, 2008 telephone conference, that fact does not alleviate Mr. Piccone's duties to the Court and his client. A simple letter to the Court explaining his plight could have resulted in the extension of deadlines, a short stay of the action, or other relief, including obtaining new counsel for plaintiff. Mr. Piccone has made no showing that he was unable to contact the Court during the time that he was preoccupied with personal matters. The Court recognizes that dismissal of this case with prejudice may have the result of denying plaintiff any relief that he might have obtained on his claims. However, plaintiff is responsible for his choice of counsel, and did not choose at any point, even after being advised of Mr. Piccone's failures, to replace him as counsel. *See Lastra v. Weil, Gotshal & Manges LLP,* No. 03 Civ. 8756(RJH) (RLE), 2005 WL 551996, at \*4 (S.D.N.Y. Mar. 8, 2005) ("Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect.")

## III. CONCLUSION

**\*6** For the foregoing reasons, this action is DISMISSED with prejudice pursuant to Rule 41(b). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1758644, 70 Fed.R.Serv.3d 397

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2533166
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dwayne JONES, Plaintiff,

v.

Dr. Amber HAWTHORNE, Doctor,
Upstate Correctional Facility, Defendant.

No. 9:12–CV–1745 (GTS/RFT).
|
Signed June 5, 2014.

**Attorneys and Law Firms**

Dwayne Jones, Malone, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for
the State of New York, Joshua E. Mcmahon, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendant.

### DECISION and ORDER

GLENN T. SUDDABY, District Judge.

 *1  Currently before the Court, in this *pro se* prisoner
civil rights action filed by Dwayne Jones ("Plaintiff")
against the above-captioned New York State correctional
employee ("Defendant"), is United States Magistrate
Judge Randolph F. Treece's Report–Recommendation
recommending that Plaintiff's Complaint be dismissed
pursuant to Fed.R.Civ.P. 41(b) for failure to prosecute the
action or comply with the procedural rules or orders of the
Court. (Dkt. No. 29.) Plaintiff has not filed an objection
to the Report–Recommendation, and the deadline by
which to do so has expired. (*See generally* Docket
Sheet.) After carefully reviewing the relevant filings in
this action, the Court can find no clear error in the Report–
Recommendation: Magistrate Judge Treece employed
the proper standards, accurately recited the facts, and
reasonably applied the law to those facts. As a result, the
Court accepts and adopts the ReportRecommendation
for the reasons stated therein. (Dkt. No. 29.)

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Treece's Report–
Recommendation (Dkt. No. 29) is *ACCEPTED* and
*ADOPTED* in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is
*DISMISSED* without prejudice pursuant to Fed.R.Civ.P.
41(b).

### REPORT–RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate
Judge.

Plaintiff Joseph Bloomfield commenced this action *pro se*
in November 2012, seeking relief, pursuant to 42 U.S.C.
§ 1983, for alleged violations of his constitutional rights.
Dkt. No. 1, Compl. At the time of the initiation of this
action, Plaintiff was in the custody of the New York State
Department of Corrections and Community Supervision
("DOCCS") and was incarcerated at Upstate Correctional
Facility.

On March 22, 2013, the Honorable Glenn T. Suddaby,
United States District Judge, conducted an initial
screening of Plaintiff's Complaint. Dkt. No. 12. After
directing dismissal of certain claims and Defendants,
Judge Suddaby directed service on the remaining
Defendant, Amber Hawthorne. [1] Dkt. No. 12. Within
that Decision and Order, Judge Suddaby advised Plaintiff
of his obligation to maintain an updated address with the
Court and opposing counsel. Specifically, Judge Suddaby
stated: "**Plaintiff is also required to promptly notify the
Clerk's Office and all parties or their counsel of any change
in his address; plaintiff's failure to do so will result in the
dismissal of this action.**" *Id.* at p. 23 (emphasis in original).

[1]     Plaintiff's request to proceed with this action *in
forma pauperis* ("IFP") was granted and the United
States Marshal was directed to effectuate service on
Plaintiff's behalf. Dkt. No. 12; *see also* 28 U.S.C. §
1915.

On April 22, 2013, Defendant filed a Motion seeking
revocation of Plaintiff's *in forma pauperis* ("IFP"),
pursuant to 28 U.S.C. § 1915(g), for having allegedly
accumulated three or more "strikes" prior to initiating
this action. [2] Dkt. No. 18. On May 8, 2013, while still
in DOCCS's custody, Plaintiff filed his Opposition to
that Motion. Dkt. No. 23. Thereafter, on February 12,

2014, this Court issued a Decision and Order denying the Motion because Plaintiff had not accumulated three strikes prior to initiating this action; Defendant was directed to respond to the Complaint. [3] Dkt. No. 4. A copy of that Decision and Order was mailed to Plaintiff at his last known address as reflected on the Docket Report. However, on February 18, 2014, that Decision and Order was returned to the Court as undeliverable. Dkt. No. 25. In the meantime, Defendant complied with the Court's direction and filed her Answer, Dkt. No. 26, and a Mandatory Pretrial Discovery and Scheduling Order was issued, setting forth various deadlines for the progression of this action, Dkt. No. 27. A copy of that Order was likewise mailed to Plaintiff at his last known address and was, on March 10, 2014, similarly returned as undeliverable. Dkt. No. 28.

[2]  In *lieu* of an answer, Defendant filed a Motion to Dismiss. Dkt. No. 18. However, because the relief sought was revocation of Plaintiff's IFP status, which is not dispositive in nature, the Clerk was directed to reflect that the Motion to Dismiss was, in actuality, a motion seeking revocation of IFP status. Dkt. No. 20. In rendering this Order, this Court further noted that this was a non-dispositive issue to be decided by the undersigned directly and not upon referral from the District Judge. *Id.* We further stayed Defendant's time to respond to the Complaint pending a determination on the Motion. *Id.*

[3]  As noted in that Decision and Order, one of the proposed strikes offered by Defendant was a dismissal of a *habeas corpus* petition. During the pendency of the Defendant's Motion, the Second Circuit issued its decision in *Jones v. Smith,* 720 F.3d 142, 147 (2d Cir.2013), putting to rest the conflict among the District Courts by ruling that dismissals of *habeas* petitions challenging a prisoner's conviction and duration of confinement do not constitute strikes for purposes of the Prison Litigation Reform Act. Dkt. No. 24 at p. 4 & n. 2.

**\*2**  According to information publically available on the New York State DOCCS website, Plaintiff was released from DOCCS custody on July 26, 2013, after serving the maximum time of incarceration for his underlying state conviction. *See* N.Y. S. DOCCS Inmate Information website, *available at* http:// nysdocslookup.doccs.ny .gov (information obtained for DIN# 11–A–1561). Since the time of such release, Plaintiff has not contacted this Court to advise of any change in his address.

In this District, all litigants have an ongoing obligation to keep their address information updated with both the Court and adversaries. N.D.N.Y.L.R. 10.1(c)(2) ("**All attorneys of record and *pro se* litigants must immediately notify the Court of any change of address.**" (emphasis in original)). A party's failure to provide such information is grounds for dismissal. N.D.N.Y.L.R. 41.2(b). As then-District Judge Pooler has observed:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany County Corr. Facility Staff,* 1996 WL 172699, at * 1 (N.D.N.Y. Apr. 10, 1996) (citations omitted).

Indeed, courts in the Northern District of New York have dismissed lawsuits brought by *pro se* plaintiffs for failure to provide a current address. *See Rivera v. Goord,* 1999 WL 33117155 (N.D.N.Y. Sept. 14, 1999); *Fenza v. Conklin,* 177 F.R.D. 126 (N.D.N.Y.1988); *Morgan v. Dardiz,* 177 F.R.D. 125 (N.D.N.Y.1998); *Williams v. Faulkner,* 1998 WL 278288 (N.D.N.Y. May 20, 1998); *Dansby v. Albany County Corr. Facility Staff,* 1996 WL 172699.

It appears that the last communication received from Plaintiff in this case was ten months ago when, on May 8, 2013, the Court received his Opposition to Defendant's Motion. Dkt. No. 23. Because the Defendant's Motion was fully briefed, we would not have expected any communication from Plaintiff during these ten months, except in certain circumstances such as providing the Court with an updated address. It is clear that in late-July

2013, Plaintiff's address changed, yet there is no indication that Plaintiff attempted to update his address with the Court. Such inaction constitute grounds for dismissal.

Furthermore, Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action, or to comply with the procedural rules or orders of the court. FED. R. CIV. P. 41(b); *see Link v. Wabash R.R. Co.,* 370 U.S. 626 (1962). [4] This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan,* 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). The correctness of a dismissal pursuant to Rule 41(b) is determined in light of five factors: (1) whether plaintiff's failure to prosecute or to comply with the court's orders or procedural rules caused a delay of significant duration; (2) whether plaintiff was on notice that failure to prosecute or to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *Lewis v. Rawson,* 564 F.3d 569, 576 (2d Cir.2009); *Lucas v. Miles,* 84 F.3d 532, 534–35 (2d Cir.1996). In making use of this test, "[n]o one factor is dispositive, and ultimately we must review the dismissal in light of the record as a whole." *United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir.2004).

[4]     It is well-settled that the term "these rules" in Rule 41(b) refers not only to the Federal Rules of Civil Procedure but also to the local rules of practice for a district court. *See Tylicki v. Ryan,* 244 F.R.D. 146, 147 (N.D.N.Y.2006).

**\*3** In this case, Plaintiff was released from DOCCS custody on July 26, 2013, over seven months ago, yet, we have never received an updated address, nor any alternative means by which to communicate with him. Plaintiff's failure to provide an updated address and make any inquiries as to this action evidences his apparent abandonment of this case and evinces an intent to not prosecute this action. The Court finds that this period of noncompliance with the requirement that he notify the Clerk's Office and Defendant of his current address weighs in favor of dismissal. Moreover, the Court finds that Plaintiff was afforded proper notice of his obligation to advise the Court and counsel of his address and

the consequences of his failure to comply. Any further warnings to Plaintiff would naturally fall on deaf ears as we have no way of contacting him.

The Court also finds that Defendant is likely to be prejudiced by further delay in the proceedings, which may well affect witnesses' memories, the ability to locate witnesses, and the preservation of evidence. A Scheduling Order was recently issued which directs the exchange of certain discovery amongst the parties. Yet, Defendant has no ability to comply with the Court's Order if she cannot communicate with Plaintiff. With regard to the fourth factor, under the circumstances, the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case, and weighs in favor of the dismissal of this action.

Lastly, the Court has carefully considered sanctions less drastic than dismissal. Without the ability to communicate with Plaintiff, however, there is no meaningful way to procure his "reappearance" to actively prosecute this action. Moreover, simply waiting for him to comply with his obligations has not been, and is not likely to be, fruitful, since he has failed to do so for some months now. As a result, the Court finds that the fifth factor also weighs in favor of dismissal.

In sum, in light of the fact that Plaintiff cannot be located or communicated with at his address of record, and given his failure to comply with his obligation to advise the Court and counsel of any change in his address, we recommend that this action be dismissed. Nevertheless, in light of Plaintiff's *pro se* status, we recommend that the dismissal of this action be without prejudice. [5]

[5]     Unless the dismissal order states otherwise, a dismissal pursuant to Rule 41(b) "operates as an adjudication on the merits." FED. R. CIV. P. 41(b).

**WHEREFORE,** it is hereby

**RECOMMENDED,** that this action be **dismissed without prejudice** pursuant to Rule 41(b) of the Federal Rules of Civil Procedure; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

**\*4** Filed March 13, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2533166

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3489574
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Rodney GRACE, Petitioner,
v.
State of NEW YORK, Respondent.

No. 10 Civ. 3853(LTS)(GWG).
|
Sept. 7, 2010.

*REPORT & RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate
Judge.

*FACTS*

**\*1** Rodney Grace, proceeding *pro se,* brought this
petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 seeking review of his state court conviction. *See*
Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C.
§ 2254, filed May 11, 2010 (Docket # 2). At the time of
the filing, Grace was detained at Anna M. Cross Center
at Rikers Island Correctional Facility. *See id.* This Court
issued an order on May 20, 2010, directing the respondent
to file an answer by July 20, 2010. *See* Order, filed May
20, 2010 (Docket # 4) ("May 20, 2010 Order").

This Order was mailed to the address on the complaint
—the Anna M. Cross Center—and it was returned as
undeliverable with a hand written notation "no such
inmate in system by name." In response, the undersigned
stayed the May 20, 2010 Order, ordered Grace to provide
the Court with an address at which he could be reached,
and informed him that if he failed to respond, his petition
would be dismissed. *See* Order, dated June 2, 2010
(Docket # 5) ("June 2, 2010 Order"). A copy of this order
was sent to a prison number that was supplied in Grace's
papers.

On June 7, 2010, Grace filed a letter with the Clerk of
Court providing a new address at the Ulster Correctional
Facility in Napanoch, New York, where he stated he was

being held on a parole violation. *See* Change of Address,
filed June 7, 2010 (Docket # 6). The court vacated the June
2, 2010 Order and reinstituted the deadlines set forth in the
May 20, 2010 Order. *See* Order, filed June 9, 2010 (Docket
# 7) ("June 9, 2010 Order").

A copy of the June 9, 2010 Order was sent to Grace
at the Ulster Correctional Facility but was returned as
undeliverable with the handwritten notation "Released–
No Forwarding Address on file." *See* Order, filed June
17, 2010 (Docket # 8). The Court's own inquiry into
the State prisoner locator system confirmed his release.
Additionally, the records of New York City's Department
of Correction did not reflect that Grace was in its custody.
Once again, the undersigned stayed the May 20, 2010
Order. *Id.* The Court further ordered that if Grace did not
provide an address at which he could be reached within
60 days, his "petition will be dismissed." *Id.* To date, the
Court has received no communication from petitioner. In
addition, there is no "Rodney Grace" in either the City or
State correctional systems according to their websites.

*DISCUSSION*

Fed.R.Civ.P. 41(b) provides, in relevant part, "[i]f the
plaintiff fails to prosecute or to comply with these rules
or a court order, a defendant may move to dismiss the
action or any claim against it." While the text of Rule
41(b) addresses only the situation in which a defendant
moves for dismissal, "it is unquestioned that Rule 41(b)
also gives the district court authority to dismiss a plaintiff's
case *sua sponte* for failure to prosecute." *LeSane v. Hall's
Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir.2001) (citing
*Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct.
1386, 8 L.Ed.2d 734 (1962) ( "The authority of a court to
dismiss *sua sponte* for lack of prosecution has generally
been considered an 'inherent power,' governed not by rule
or statute but by the control necessarily vested in courts
to manage their own affairs so as to achieve the orderly
and expeditious disposition of cases.")). Unless the court
specifies otherwise, Rule 41(b) provides that dismissal
"operates as an adjudication on the merits."

**\*2** While appellate courts apply a number of factors
in evaluating the propriety of a dismissal for failure
to prosecute, *see Martens v. Thomann,* 273 F.3d 159,
180 (2d Cir.2001), a district court is not required to
discuss these factors in dismissing a case as long as an
explanation is given for the dismissal, *see id.; Lucas v.
Miles,* 84 F.3d 532, 535 (2d Cir.1996). Here, it is sufficient

to say that this case cannot proceed without Grace's participation, and he has provided no method by which the Court can inform him of his obligations in this case or its outcome. Courts have repeatedly recognized that dismissal for failure to prosecute is appropriate where a plaintiff effectively disappears by failing to provide a current address at which he or she can be reached. *See, e.g., Fate v. Doe,* 2008 WL 1752223, at *2 (S.D.N.Y. Apr.16, 2008); *Coleman v. Doe,* 2006 WL 2357846, at *3 (E.D.N.Y. Aug.14, 2006); *Dong v. United States,* 2004 WL 385117, at *3 (S.D.N.Y. Mar.2, 2004); *Love v. F.B.I.,* 2002 WL 2030828, at *1 (N.D.Tex. Sept.3, 2002); *Ortiz v. United States,* 2002 WL 1492115, at *2 (S.D.N.Y. July 11, 2002); *Hibbert v. Apfel,* 2000 WL 977683, at *2–3 (S.D.N.Y. July 17, 2000); *Norlander v. Plasky,* 964 F.Supp. 39, 41–42 (D.Mass.1997). However, because "dismissal with prejudice is 'a harsh remedy to be utilized only in extreme situations,' " *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972)), the Court recommends that dismissal be without prejudice, *see generally LeSane,* 239 F.3d at 209 ("*pro se* plaintiffs should be granted special leniency regarding procedural matters"); *Coleman,* 2006 WL 2357846, at *3 (dismissal without prejudice where *pro se* plaintiff could not be reached at the address he provided (citation omitted)); *Whitaker v. N.Y. City Police Dep't,* 1989 WL 37678, at *1 (S.D.N.Y. Apr.11, 1989) (same).

*Conclusion*

For the foregoing reasons, the petition should be dismissed without prejudice.

## *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura Taylor Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3489574

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.